UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DUONE MORRISON (#08-A-2086),                          **REPORT AND**
                                                       **RECOMMENDATION**
                                    Plaintiff,

v.                                                     12-CV-00542(A)(M)

RICK STROMAN, et al.,

                                    Defendants.

_____

          Before me are defendants' motions for summary judgment pursuant to Fed. R.

Civ. P. ("Rules") 56 and 12(d)  [27, 36].[1]  These motions, being dispositive, have been referred to

me by Hon. Richard J. Arcara for a Report and Recommendation [34].[2]  For the following

reasons, I recommend that the motions be denied, without prejudice.


                                   **BACKGROUND**

          Plaintiff, an inmate, commenced this action *pro se* pursuant to 42 U.S.C. §1983

against various employees of the New York State Department of Corrections and Community

Services ("DOCCS") arising from his confinement at the Southport Correctional Facility.

Complaint [1].  As a result of the screening of the Complaint pursuant to  28 U.S.C.

§§1915(e)(2)(B) and 1915A, plaintiff was permitted to proceed with his Second Claim alleging

that on September 25, 2009, defendant Correction Officer Rick Stroman denied him a bed pan

---

[1]          Bracketed references are to the CM/ECF docket entries.

[2]          Although oral argument was originally scheduled for October 29, 2014, on October 27,
2014 defendants' counsel advised my chambers that plaintiff was unavailable to participate in the oral
argument and that defendants were willing to submit their motion on the papers.  Having reviewed the
motion papers, I determined that oral argument is unnecessary.

causing him to urinate on the floor, in violation of the Eighth Amendment. March 28, 2013

Decision and Order [3].  Plaintiff's Eighth Amendment claims arising from his alleged restricted

diet (Complaint [1], Third Claim) and the torture he endured  (id., Fourth Claim) were dismissed,

without prejudice, and plaintiff was permitted to file an Amended Complaint asserting these

claims by May 1, 2013, failing which they would be dismissed, with prejudice.  March 28, 2013

Decision and Order [3], p. 12.

Plaintiff did not file an Amended Complaint, and the Summons and Complaint

were served on defendant Stroman [4].  After defendant Stroman filed an Answer [5], I

conducted a preliminary pretrial conference on October 3, 2013 at which plaintiff advised me

that he had not received the March 28, 2013 Decision and Order.  October 3, 2013 Minute Entry

[9].  Therefore, I mailed plaintiff a copy of the March 28, 2013 Decision and Order and permitted

him to file an Amended Complaint.  November 1, 2013 Text Order [11].  Plaintiff's Amended

Complaint [16] was screened by Judge Arcara pursuant to 28 U.S.C. §§1915(e)(2)(B) and

1915A, in the same manner it would have if plaintiff had filed an Amended Complaint as

directed in the initial Decision and Order. May 21, 2014 Decision and Order [25], p. 3.

As a result of that screening, plaintiff was permitted to proceed with his Eighth

Amendment claims against defendant Stroman arising from the alleged denial of a bedpan on

September 25, 2009 (Amended Complaint [16], First claim), and against defendants Stroman,

Herrick, Vaughn and Robyck[3] for alleged torture he suffered while on contraband watch from

September 22 through September 29, 2009 (id., Third Claim).

---

[3]      These three additional defendants are identified only by their surnames.

With respect to exhaustion of administrative remedies, plaintiff's Amended Complaint [16] alleges that "[a] grievance was filed at Southport Correctional Facility and I never received a response after I filed it. (See Exhibit 'A') Since I was denied my response, I was prevented from exhausting my administrative remedies to the next level" (id., Point IV). Attached to the Amended Complaint as Exhibit A is a grievance dated September 30, 2009 concerning the mental torture he experienced while on contraband watch and the denial of a bed pan (id., p. 59 of 59).

In lieu of answering the Amended Complaint, defendant Stroman moved for summary judgment [27], arguing that plaintiff had failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1995, 42 U.S.C. §1997e *et seq*. ("PLRA").[4] In response to defendant Stroman's motion for summary judgment plaintiff submitted a letter [33], stating in relevant part: "As I have not been afforded an opportunity to have discovery in this matter, I would ask the Honorable Court to stay the motion until discovery is complete". Alternatively, he requested an extension of time to respond to defendant Stroman's motion (id.), and I scheduled a conference for August 11, 2014  to address plaintiff's letter.  July 15, 2014 Text Order [34].

Prior to that conference, defendants Herrick, Robyck and Vaughn filed a Notice of Motion [36] joining in defendant Stroman's motion for summary judgment.  At the August 11, 2014 conference, the parties agreed upon a briefing schedule for both motions [27, 36], and I advised plaintiff that "[i]f [he] seeks discovery to oppose the motions, his response shall identify

---

[4]        This procedure is permissible.  *See* <u>Crenshaw v. Syed</u>, 686 F. Supp.2d 234, 235 n. 1 (W.D.N.Y. 2010).

the specific discovery he seeks and why that discovery is necessary to oppose the motions.  *See* Fed. R. Civ. P. 56(d)." August 11, 2014 Text Order [37].

        As part of plaintiff's opposition to defendants' motions, he submits a Declaration [38], stating that "the information he seeks is in defendant's control" (id., ¶9) and that the "discovery required" is "in the form of interrogatories and document requests, in order to establish the facts sought are reasonably expected to support his claims of genuine issues of material facts" (id., ¶10).   After defendants noted in their  reply  that plaintiff  had failed to submit an opposing statement of material facts (Murphy Reply Declaration [41], ¶12), he submitted a belated Opposing Statement of Facts [42], which I will consider.


## ANALYSIS

### A.      Summary Judgment Standard

        "The standards governing summary judgment are well-settled. Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. Summary judgment is improper if there is any evidence in the record that could reasonably support the jury's verdict for the non-moving party." Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003).

If the party opposing summary judgment "shows by affidavit or declaration that, for specific reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declaration or to take discovery; or (3) issue any other appropriate order". Rule 56(d). To obtain this relief, the party opposing summary judgment must establish: " (1) what facts are sought [to resist the motion] and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts. " Miller v. Wolpoff & Abramson, LLP., 321 F.3d 292, 303 (2d Cir.), cert. denied, 540 U.S. 823 (2003).

Rule 56(d) "is a safeguard against premature grants of summary judgment and should be applied with a spirit of liberality".  Holmes v. Lorch, 329 F.Supp.2d 516, 529 (S.D.N.Y.2004); Delphi  Delco Electronics Systems v. M/V NEDLLOYD EUROPA, 324 F.Supp.2d 403, 417  18 (S.D.N.Y. 2004) (Rule 56(d) "is an important safeguard against improvident or premature motions for summary judgment, courts generally avoid overly technical rulings under this subdivision and apply it with a spirit of liberality"). This is especially true where a party has not had an opportunity to conduct any discovery. "The nonmoving party should not be 'railroaded' into his offer of proof in opposition to summary judgment . . . . The nonmoving party must have 'had the opportunity to discover information that is essential to his opposition' to the motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n. 5 (1986).

**B.**      **Did Plaintiff Exhaust his Administrative Remedies?**

42 U.S.C. §1997e(a) states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules as a precondition to filing a federal lawsuit." Espinal v. Goord, 558 F. 3d 119, 124 (2d Cir. 2009). "The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules." Woodford v. Ngo, 548 U.S. 81, 95 (2006).

"To satisfy the exhaustion requirement set forth in [the PLRA], a New York State inmate is generally required to follow the grievance procedure prescribed in 7 N.Y.C.R.R. §701.5. The inmate must submit a grievance, within twenty-one days of the relevant occurrence, to the Inmate Grievance Program ('IGP') supervisor. The grievance is then forwarded to the Inmate Grievance Resolution Committee ('IGRC'), which has sixteen days to resolve it informally or to conduct a hearing. If dissatisfied, the inmate may, within seven days after receipt of the IGRC's determination, appeal to the facility superintendent, who has twenty days to render a decision. The inmate then has another seven days after receiving the superintendent's decision to take the final step, an appeal to the Central Office Review Committee ('CORC'). All three steps of this grievance procedure must be completed before an inmate may commence suit

in federal court." <u>Seeley v. Boehlert</u>, 2013 WL 4780908, *3 (W.D.N.Y. 2013).[5]  "A prisoner is

not required to affirmatively plead exhaustion of administrative remedies in order to bring an

action under 42 U.S.C. §1983". <u>Id</u>.

   In support of defendants' argument that plaintiff failed to exhaust his

administrative remedies for any of his claims, they rely on the Declaration of Sabrina VonHagn,

Southport's IGP Supervisor [29].  She states that a search has "revealed that plaintiff never filed

a grievance concerning any of [his] allegations" (<u>id</u>., ¶7).  She also states that if plaintiff's

September 30, 2009 grievance had been received by her office, it would have a number, which

plaintiff's grievance lacks (<u>id</u>., ¶8).  VonHagn's Declaration attaches printouts of Southport's

grievance database, identifying his only grievance as being filed on August 12, 2009 concerning

shower issues (<u>id</u>., Ex. B, p. 22 of 25), and of plaintiff's CORC appeals, identifying that he filed

five appeals in 2012 concerning unrelated issues (<u>id</u>., Ex. C, p. 24 of 25).

   Even crediting plaintiff's assertion that he filed the September 30, 2009 grievance,

it is undisputed that plaintiff did not complete the last two steps of the grievance process by

appealing to the Superintendent or to CORC.  The fact that plaintiff's  grievance was not acted

upon is insufficient to excuse his failure to fully exhaust his administrative remedies.  "The

administrative process must reach a final result even when an inmate files an initial grievance

---

[5]  "An expedited procedure exists for grievances that allege harassment by prison staff: the grievance is sent directly to the superintendent, and, if the grievance is a bona fide harassment issue, the superintendent must initiate or request an investigation and render a decision, after which the prisoner could then appeal to the CORC." <u>Mateo v. Corebine</u>, 2010 WL 3629515, *3 (S.D.N.Y. 2010) (internal quotations omitted).

and does not receive a response".  Scott v. Goulding, 2014 WL 2199431, *2 (S.D.N.Y. 2014).

"In fact, DOCCS' regulations specifically contemplate such a situation. . . . '[A]ny failure by the

IGRC or the superintendent to timely respond to a grievance or first-level appeal . . . can be

appealed to the next level, including CORC, to complete the grievance process'" Zafuto v.

Okeefe, 2014 WL 297102, *5 (W.D.N.Y. 2014).  See 7 N.Y.C.R.R. §701.6(g)(2) ("matters not

decided within the time limits may be appealed to the next step").


C.      **Can Plaintiff's Failure to Fully Exhaust his Administrative Remedies be Excused?**

               Notwithstanding plaintiff's failure to exhaust his administrative remedies, the

Second Circuit has cautioned that "while the PLRA's exhaustion requirement is mandatory . . .

certain caveats apply."  Ruggiero v. County of Orange, 467 F. 3d 170, 175 (2d Cir. 2006).

"These caveats fall into three categories: when (1) administrative remedies are not available to

the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such

as way as to estop them from raising the defense; or (3) special circumstances, such as a

reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply

with the exhaustion requirement."  Id. (*citing* Hemphill v. New York, 380 F.3d 680, 686 (2d Cir.

2004)).[6]

---

[6]     Woodford held that "proper exhaustion of administrative remedies" requires "
'using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the
issues on the merits)". 548 U.S. at 90  (emphasis in original). "While the Second Circuit has left
unresolved the continuing vitality of the Hemphill exceptions in light of the Supreme Court's ruling
in Woodford . . . , Hemphill remains good law, and the Court must therefore consider whether any
exceptions apply to Plaintiff's failure to exhaust." Rambert v. Mulkins, 2014 WL 2440747, *11
(S.D.N.Y. 2014).

"[A] defendant in a prisoner civil rights action may not be estopped from asserting the affirmative defense of failure to exhaust administrative remedies . . . . based on the actions or inactions of other individuals" <u>Warren v. Bealey</u>, 2014 WL 4715863, *12  (N.D.N.Y. 2014).  However "[a] prisoner may invoke the doctrine of estoppel when defendants took affirmative action to prevent him from availing himself of grievance procedures".  <u>Amador v. Andrews</u>, 655 F.3d 89, 103 (2d Cir. 2011).

Here,  plaintiff alleges, upon information and belief, that "the named defendants . . .  destroyed or discarded the grievance handed to them".  Plaintiff's Response [39], ¶3; Plaintiff's Opposing Statement of Facts [42], ¶20 ("defendants prevented said grievance from being filed"); ¶24 ("the actions of the defendants . . . prevented him from pursuing the appeal process").[7]  *Compare with* <u>Heyliger v. Gebler</u>, 2014 WL 4923140, *5 (W.D.N.Y. 2014) ("[T]here is no basis to estop these Defendants from raising the issue of non-exhaustion, as there is no allegation that they were in any way connected to the alleged destruction of the original grievance"); <u>Warren</u>, 2014 WL 4715863 at *12 ("to the extent that Plaintiff's Complaint can be interpreted as asserting that estoppel is warranted due to the alleged interference/destruction of his grievances by non-party Officers . . . , such claims are unavailing").[8]  Plaintiff is entitled to an opportunity to test this allegation through discovery.

---

[7]       Defendants erroneously argue that plaintiff's estoppel allegation is "only contained in plaintiff's memorandum of law and not accompanying declaration".  Murphy Reply Declaration [41], ¶21.

[8]       I note that many of plaintiff's submissions [38-40] in opposition to the defendants' motion are not signed.  However, defendants have not argued that his submissions should  be disregarded nor have they moved to strike them.  In any event, many of  plaintiff's factual  allegations are contained in his Opposing Statement of Facts [42], which is signed under penalty of perjury pursuant to 28 U.S.C. §1746. *See, e.g.*, ¶¶6, 7, 16,  22, 24.

Plaintiff further  alleges that "after being removed from contraband watch and filing said grievance, was removed from Southport . . . and transferred into the care of Central New York Psychiatric Center and could not have inquired about a grievance filed at that facility or filed a new one as the 21 days in which to file a grievance had expired".  Plaintiff's Opposing Statement of Facts [42], ¶22.  Liberally interpreting plaintiff's submission, this may establish that he did not have grievance procedures available to him to fully exhaust his grievance following his transfer.  *See* Wingate v. Gives,  2008 WL 5649089, *13 (S.D.N.Y. 2008) ("If Plaintiff was not permitted to appeal prior grievances upon his transfer to different facilities at Rikers Island . . . then the grievance procedure may have been no longer 'available' to him, as required for purposes of exhaustion").

Moreover, the Amended Complaint attaches the October 2, 2009 treatment notes of Lori Seymour, LMSW, SWII, reflecting that plaintiff attempted to commit suicide that day, leading to his transfer.  Amended Complaint [16], Ex. G.[9]  If plaintiff was mentally incapacitated following his suicide attempt, this may excuse his failure to exhaust. *See*  Bonilla v. Janovick, 2005 WL 61505, *2 (E.D.N.Y. 2005) ("since plaintiff's hospitalization and physical injuries may have prevented the filing of an administrative complaint, further discovery and additional depositions would be needed to determine whether the admitted failure to exhaust should nevertheless be excused").  *But see* Pooler,  848 F.Supp.2d at 342 ("Plaintiff attempted suicide on December 23, 2009, was hospitalized briefly, and returned to regular housing . . . on December

---

[9]       "The plaintiff has not actually made the argument that he was unable to file a grievance because he was incapacitated following the suicide attempt in any of his filings with the Court. In an abundance of caution, however, the Court addresses this argument."  Pooler v. Nassau University Medical Center, 848 F.Supp.2d 332, 343 n. 11 (E.D.N.Y. 2012).

25, 2009 . . . . Plaintiff has offered no evidence that he was prevented from, or was unable to file a grievance upon his return two days after the suicide attempt").

Pointing to the fact that plaintiff "had appealed 4 grievances . . . to CORC in 2012, just the year *before* his purported grievance at issue in this action", defendants also argue that "any claim that plaintiff did not receive instructions as to how to pursue an administrative appeal does not create a triable issue of fact as plaintiff knew how to appeal". Murphy Reply Declaration [41], ¶15 (emphasis added).   Defendants' timeline is incorrect.   Plaintiff's CORC appeals were filed in 2012, *after* his 2009  grievance at issue here.   Thus, this does not establish that plaintiff was familiar with the grievance appeal process.

Drawing all inferences and resolving all ambiguities in the plaintiff's favor (as I must), and recognizing that plaintiff has not had an opportunity to conduct any discovery, I conclude that material questions of fact exist as to whether  plaintiff's failure to fully exhaust his administrative remedies may be excused.   Therefore, I recommend that defendants' motion be denied, without prejudice.


## CONCLUSION

For these reasons, I recommend that defendants' motions for summary judgment [27, 36] be denied, without prejudice.   Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by November 24, 2014 (applying the time frames set forth in Rules 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara.  A party who "fails to object timely . . .

-11-

waives any right to further judicial review of [this] decision". <u>Wesolek v. Canadair Ltd.</u>, 838 F. 2d

55, 58 (2d Cir. 1988); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985).

      Moreover, the district judge will ordinarily refuse to consider *de novo* arguments,

case law and/or evidentiary material which could have been, but were not, presented to the

magistrate judge in the first instance. <u>Patterson-Leitch Co. v. Massachusetts Municipal Wholesale</u>

<u>Electric Co.</u>, 840 F. 2d 985, 990-91 (1st Cir. 1988).

      The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local

Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed

findings and recommendations to which objection is made and the basis for each objection . . .

supported by legal authority", and must include "a written statement either certifying that the

objections do not raise new legal/factual arguments, or identifying the new arguments and

explaining why they were not raised to the Magistrate Judge".  Failure to comply with these

provisions may result in the district judge's refusal to consider the objections.

Dated:   November 5, 2014

                  /s/ Jeremiah J. McCarthy
                  JEREMIAH J. MCCARTHY
                  United States Magistrate Judge