UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DUANE MORRISON (#08-A-2086),

                        Plaintiff,

v.

RICK STROMAN, et al.,

                        Defendants.
_____

**REPORT AND
RECOMMENDATION**

12-CV-00542-LJV-JJM

        This case was referred to me by Hon. Richard J. Arcara for supervision of pretrial proceedings, including the preparation of a Report and Recommendation on dispositive motions [7][1], and it was later reassigned to Hon. Lawrence J. Vilardo [66]. Before me is defendants' motion for summary judgment [56]. Oral argument was held on January 20, 2016 [65]. For the following reasons, I recommend that the motion be granted.

## BACKGROUND

        Plaintiff, an inmate, commenced this 42 U.S.C. §1983 action *pro se*. Complaint [1]. His claims arise from his placement in contraband watch confinement by defendant Corrections Sergeant Bruce Herrick between September 22 and September 30, 2009 at the Southport Correctional Facility, after he was observed putting an unknown object into his mouth. Amended Complaint [16], ¶17; [55], p. 5 of 73, Bates No. 1323. Plaintiff's confinement in contraband watch was pursuant to New York Department of Corrections and Community Supervision ("DOCCS") Directive No. 4910, which permits an inmate to remain "isolated for a period not to exceed 48 hours unless . . . . two negative defecations do not occur within 48 hours

_____
[1]       Bracketed references are to the CM/ECF docket entries.

in which case the inmate will be retained until two negative defecations occur".  Plaintiff's Declaration [62-2], ¶9.[2]

Plaintiff alleges that while in contraband watch confinement on September 23, 2009, he notified defendant Correction Officer ("CO") Chad Vaughn at 7:00 p.m.  that he had to defecate, but was not permitted to do so until 8:30 p.m. Amended Complaint [16], ¶¶18-19. Despite "defecating 2 substantial logs of feces", Sergeant Herrick claimed "it to be insufficient" (id., ¶29). On September 23, 2009, a Deprivation Order removing plaintiff's mattress, sheets, blanket and pillow was issued that falsely accused him of using these items "to wipe" (id., p. 49 of 59).  Plaintiff alleges that contrary to the Deprivation Order, feces was "taken by one of the officers and . . . thrown all over [his] sheets, blankets and mattress" (id., ¶30).[3]  He appears to attribute the removal of the soiled items to defendant CO Michael Robyck  (id., ¶31).

Plaintiff alleges that he next defecated on September 24, 2009, and that it "was determined to be a significant amount", but "no contraband was found" (id., ¶33).  He defecated again on September 24 and September 25, 2009, but each time it was recorded as "insignificant" (id., ¶¶34, 37).  Plaintiff alleges that "correctional staff were making a concerted effort to retaliate against him by repeatedly saying his defecation was insignificant to keep him on contraband watch" (id., ¶38).

On September 25, 2009, plaintiff allegedly asked defendant CO Rick Stroman to use the urinal, but was "repeatedly ignored", resulting in him urinating "under the door and onto the gallery so it would not stay in his cell" (id., ¶¶40-41).  As a result of urinating on the floor, he

---

[2]      Although Directive No. 4910 is not included in the record, defendants do not dispute the accuracy of the portions of the Directive plaintiff recites.

[3]      Any Eighth Amendment claim arising from the deprivation of his mattress, bed linens and pillows was previously dismissed.  *See* District Judge Michael A. Telesca's March 28, 2013 Order [3], p. 5.

was issued a Pre-Hearing Restricted Diet Order and a second Deprivation Order taking away exercise, showers, haircuts and cell cleanup (id., pp. 51, 53 of 59). He alleges that he then entered a "suicidal depression" [67], ¶44.[4]

He next defecated an "insignificant amount" on September 26, 2009 (id., ¶45), and then went three "full days" without defecating due to "sporadic eating and depression" (id., ¶49). On September 30, 2009, plaintiff was sent on an "outside trip to see [a] mental health worker", and later that day was "removed from contraband watch without ever providing an alleged 'significant' amount of feces for the second time" (id., ¶¶54-55).

Prior to his placement into contraband watch confinement, plaintiff was seen by Jacqueline Gilmore, LMSW, SWII, on August 24, 2009. Her Progress Notes from that visit indicate that while plaintiff reported twice previously attempting suicide, at that time he was "stable; no acute symptoms; denies suicidal/homicidal ideation, plan or intent; denies feeling hopelessness/helplessness" [67-1], p. 2 of 2. However, shortly after plaintiff's release from contraband watch confinement, he attempted suicide [67-10], p. 2 of 4.

Plaintiff alleges that defendant CO Stroman violated his Eighth Amendment rights by denying "him access to the urinal and bedpan without any probable cause" (Amended Complaint [67], First Cause of Action), and that all defendants violated his Eighth Amendment rights by "allowing, condoning, and enabling . . . [the] physical and mental torture" he endured while in contraband watch (id., Third Cause of Action).[5]

---

[4]    As highlighted by defendants, the version of the Amended Complaint contained on the docket was missing paragraphs 42-45 and 50-56. Defendants' Memorandum of Law [56-2], p. 2 n. 3. A complete version has since been docketed [67].

[5]    All other claims and defendants were previously dismissed. *See* Judge Telesca's March 28, 2013 Order [3].

Defendants move for summary judgment arguing that: 1) plaintiff's claims do not establish a cognizable Eighth Amendment violation (defendants' Memorandum of Law [56-2], pp. 6-11); 2) plaintiff fails to establish the personal involvement of CO Robyck (id., pp. 12-14); and 3) they are entitled to qualified immunity (id., pp. 14-16).

## ANALYSIS

**A.     Plaintiff's Request to Stay or Dismiss Defendants' Motion for Summary Judgment**

Plaintiff alleges that defendants failed to produce his records from the New York Psychiatric Center dated December 11, 2009, and argues that this failure "provides reasonable cause . . . to either dismiss or stay [their] summary judgment motion at this time". Plaintiff's Declaration [62], ¶10.

Plaintiff appears to be relying on Fed. R. Civ. P. ("Rule") 56(d)(1), which permits a court to "defer considering the motion or deny it", where a nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition". However, absent any explanation by plaintiff of the relevance of these records, which post-date his confinement in contraband watch, or why he failed to seek these records prior to the June 29, 2015 fact discovery deadline (Case Management Order [50], ¶3), plaintiff's request is denied.

**B.     Defendants' Motion for Summary Judgment**

**1.     Summary Judgment Standard**

"The standards governing summary judgment are well-settled. Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law. The party

seeking summary judgment has the burden to demonstrate that no genuine issue of material fact

exists.  In determining whether a genuine issue of material fact exists, a court must examine the

evidence in the light most favorable to, and draw all inferences in favor of, the non-movant.

Summary judgment is improper if there is any evidence in the record that could reasonably

support a jury's verdict for the non-moving party." Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir.

2003).


    **2.**    **Plaintiff's Eighth Amendment Claim**

    "To demonstrate that the conditions of his confinement constitute cruel

and unusual punishment, the plaintiff must satisfy both an objective test and a subjective test.

First, the plaintiff must demonstrate that the conditions of his confinement result in unquestioned

and serious deprivations of basic human needs.  Second, the plaintiff must demonstrate that the

defendants imposed those conditions with "deliberate indifference." Jolly v. Coughlin, 76 F.3d

468, 480 (2d Cir. 1996).  Defendants argue that plaintiff has failed to satisfy either test.

Defendants' Memorandum of Law [56-2], p. 7.

    Turning to the objective element of plaintiff's Eighth Amendment Claim, "the

Constitution does not mandate comfortable prisons". Rhodes v. Chapman, 452 U.S. 337, 349

(1981).  The Eighth Amendment is only violated by those deprivations which deny "the minimal

civilized measure of life's necessities" (id. at 347), which means that inmates must not be

deprived of "basic human needs - *e.g.*, food, clothing, shelter, medical care, and reasonable

safety". Helling v. McKinney, 509 U.S. 25, 32 (1993).  "Nor may prison officials expose

prisoners to conditions that 'pose an unreasonable risk of serious damage to [their] future

health.'" <u>Phelps v. Kapnolas</u>, 308 F.3d 180, 185 (2d Cir. 2002) (*quoting* <u>Helling</u>, 509 U.S. at 32). "Ultimately, to establish the objective element of an Eight[h] Amendment claim, a prisoner must prove that the conditions of his confinement violate contemporary standards of decency." <u>Id</u>.

"Some conditions of confinement may establish an Eighth Amendment violation in combination when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise - for example, a low cell temperature at night combined with a failure to issue blankets." <u>Wilson v. Seiter</u>, 501 U.S. 294, 304 (1991) (emphasis omitted). However, "[n]othing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." <u>Id</u>. at 305. With this standard in mind, I will address plaintiff's claim.

In response to defendants' motion, plaintiff relies on the fact that he was forced on September 25, 2009 to urinate on the floor while in contraband watch after his requests to CO Stroman for a bed pan were denied. Plaintiff's Declaration [62] ¶6; plaintiff's Opposing Statement of Facts [62-1], ¶29. Likewise, plaintiff alleges that on September 23, 2009, CO Vaughn ignored his request to use the bathroom, resulting in him waiting ninety minutes to defecate. Defendants' Statement of Undisputed Facts [56-1], ¶6; plaintiff's Opposing Statement of Facts [62-1], ¶6.

However, even fully crediting plaintiff's version of events, "[t]he temporary deprivation of the right to use the toilet, in the absence of serious physical harm or a serious risk of contamination, does not rise to the level of an objective constitutional violation". <u>Mateo v. Alexander</u>, 2012 WL 864805, *5 (S.D.N.Y. 2012). *See* <u>Whitted v. Lazerson</u>, 1998 WL 259929,

*2 (S.D.N.Y. 1998) (no violation where prisoner urinated and defecated on himself after being

deprived the opportunity to use a toilet for approximately ninety minutes); Gill v. Riddick, 2005

WL 755745, *16, adopted, 03-cv-01456 [30] (N.D.N.Y. 2005) (no violation where the plaintiff

was denied access to a lavatory for seventy minutes and urinated on himself); Bourdon v. Roney,

2003 WL 21058177, *10 (N.D.N.Y. 2003) (no violation where immediately after his arrest, the

defendant "was placed in a hot, unventilated car for three hours without water or bathroom

privileges").[6]  Since plaintiff has failed to point to any serious harm  or unreasonable risk of

serious harm arising from the delays he experienced in being granted access to the bathroom,

these occurrences fail to constitute an Eighth Amendment violation.  *See* D'Attore v. New York

City, 2015 WL 556778,  *11 (S.D.N.Y.  2015) (finding no Eighth Amendment violation where

the "plaintiff offers no competent evidence that the delays [he experienced in obtaining access to

a toilet] caused him serious injury or . . . posed a substantial risk of doing so").

       Plaintiff also alleges that he was "psychologically tortured while illegally

confined [for seven days] on the basis that [he] had not defecated a 'significant amount' to show

[that he] had no contraband in [his] system".  Plaintiff's Declaration [62], ¶8.  According to

plaintiff, "there is nothing in Directive 4910 that allows an officer to use the abstract measure of

'insignificant amount' to replace the 'negative defecation' finding which is specifically outlined

in the Directive".  Plaintiff's Declaration [62-2], ¶9.  However, even if that were true and

defendants violated Directive 4910, that does not, standing alone, establish a constitutional

---

[6]    *Compare with* DeBlasio v. Rock,  2011 WL 4478515, *16 (N.D.N.Y. 2011) (where the plaintiff
defecated and urinated on himself after being left handcuffed in his cell for five hours and pleading that
he needed to use the bathroom, the court denied the defendants' motion for summary judgment,
concluding that "a reasonable juror, if he or she credited Plaintiff's version of events, could find that being
handcuffed for five hours while pleading to be released in order to use the bathroom is an extreme
deprivation").

violation.  Defendants' Memorandum of Law [64], pp. 5-6.  *See* Perez v. New York State

Department of Correctional Services, 2010 WL 1235637, *4 (N.D.N.Y.  2010), adopted, 2010

WL 1608868 (N.D.N.Y. 2010), aff'd, 448 Fed. App'x. 152 (2d Cir. 2012) (Summary Order)

("even if we were to find that DOCS Directive 4910 was violated, that doesn't necessarily

translate into a §1983 violation.  Indeed, it is clear that a violation of a state law or regulation, in

and of itself, does not give rise to liability under 42 U.S.C. §1983 . . . . Thus, to the extent

Plaintiffs rely primarily on the purported violation of DOCS Directive 4910 as support for their

§1983 actions, such claims must fail").

Defendants argue that there is otherwise "nothing specific about being in . . . . a

contraband watch for seven days which amounts to deliberate indifference", and "[p]laintiff does

not allege that he was denied food, water, or medical attention while under watch".  Defendants'

Reply Memorandum of Law [64], p. 4.  I agree.  *See* Thomas v. Irvin, 981 F. Supp. 794, 802

(W.D.N.Y. 1997) (Skretny, J./Heckman, M.J.) ("the undisputed facts clearly demonstrate that the

conditions in the isolation room during plaintiff's drug watch confinement did not place him at a

substantial risk of serious harm"); Sital v. Burgio, 592 F. Supp.2d 355, 359 (W.D.N.Y. 2009)

(Larimer, J.) ("Although the evidence indicates that plaintiff's living conditions were unpleasant

[during his six days in contraband watch], the evidence does not support a finding that those

conditions were particularly severe, or that they jeopardized his health or safety, so as to give rise

to an Eighth Amendment claim"); Centeno v. Wilson, 2011 WL 836747, *3 (E.D. Cal. 2011),

aff'd, 479 Fed. App'x. 101 (9th Cir. 2012) ("Plaintiff contends that  . . .  he was forced to sleep

on a cold floor without a mattress or blanket for 7 days and was unable to shower while in

[contraband watch] confinement . . . . [T]he living conditions experienced by plaintiff for this

limited duration were not so extreme as to violate contemporary standards of decency and rise to

the level of a constitutional   deprivation . . . . Here, plaintiff received adequate food, clothing, shelter, and medical care while in [contraband watch] confinement"); Raybon v. Totten, 2014 WL 3867433, *5 (E.D. Cal.), adopted, 2014 WL 4656202 (E.D. Cal. 2014) ("Because there is no evidence that the conditions of confinement during plaintiff's sixteen day stay on [contraband watch] posed an excessive risk to his health or safety, plaintiff has necessarily failed to establish that [defendants] knew of and disregarded such a risk").

While plaintiff's opposition to the motion centers on the denial of his access to the bathroom and the propriety of his extended confinement in contraband watch, in passing he states that on September 23, 2009 it was "freezing" in the room where he taken to defecate and that CO Vaughn ignored his requests to close the window.  Plaintiff's Opposing Statement of Facts [62-1], ¶34.  However, there is no evidence that he was exposed to freezing temperatures at any other time during his confinement in contraband watch.  Since his exposure to freezing temperatures was not prolonged, I conclude that no Eighth Amendment violation occurred.  *See* Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001) ("We have held that an Eighth Amendment claim may be established by proof that the inmate was subjected for a prolonged period to bitter cold").

While in contraband watch confinement, plaintiff was also given two Deprivation Orders: the first, dated September 23, 2009, removing plaintiff's mattress, sheets, blanket and pillow (Amended Complaint [67-7], p. 2 of 2); and the second, dated September 25, 2009, depriving him of the privileges of "exercise, showers, haircuts, and cell cleanup" [67-9], p. 2  of 2.  He also was placed on a Pre-Hearing Restricted Diet Order commencing on September 25, 2009 [67-8], p. 2 of 2.  All three of these orders were continued for the duration of his

confinement in contraband watch.  However, plaintiff does not allege, refer, or cite to these

orders or the deprivations themselves in his response to defendants' motion.

   Nevertheless, even if I were to consider these additional deprivations, which

certainly enhanced the unpleasant experience of being on contraband watch, they still fail -

whether considered individually or collectively with all of the conditions of his confinement  -  to

establish an Eighth Amendment violation.  *See* Houston v. Goord, 2009 WL 890658, *15

(N.D.N.Y. 2009) ("The denial of exercise for a period of thirteen days . . .  does not rise to a

level sufficient to support a constitutional deprivation"); Judge Telesca's March 28, 2013 Order

[3], p. 5 ("The failure to provide plaintiff with a mattress, bed linens and pillow, for the relatively

short time at issue (8 days) does not violate the Eighth Amendment"); George v. Goord, 2009

WL 1448986, *16 (W.D.N.Y. 2009) (Schroeder, M.J./Arcara, J.) ("placement on a restricted diet

for as many as seven days does not rise to the level of an Eighth Amendment violation");

Johnson v. Colvin, 2013 WL 775357, *4 (W.D.N.Y. 2013) (Siragusa, J.) ("temporary

deprivations of showers for periods of approximately two weeks . . . do not satisfy the objective

component of a claim of cruel and unusual punishment"); McNatt v. Unit Manager Parker, 2000

WL 307000, *4 (D. Conn. 2000) (no Eighth Amendment violation where the plaintiff was

denied, *inter alia*, "clean clothing, toiletries, bedding and cleaning supplies for six days").

   To the extent that plaintiff's claim may also be interpreted as alleging that

defendants were deliberately indifferent to the risk of suicide posed by his placement in

contraband watch  - a point not expressly addressed by either party -  this claim would similarly

fail.  Plaintiff's Declaration [62-2], ¶19 ("[I] attempted to end my life  . . . by hanging myself due

to the psychological effect the torture of the defendant's had on him").  "As with any other

claim of deliberate indifference under the Eighth Amendment, a prisoner asserting such a claim

based on an attempted suicide must satisfy both the objective and subjective components of an Eighth Amendment claim." <u>Doe v. Selsky</u>, 973 F. Supp. 2d 300, 302 (W.D.N.Y. 2013) (Larimer, J.). Notwithstanding plaintiff's apparent pre-existing mental health issues, defendants were not indifferent to his mental health needs while in contraband watch. It is undisputed that he was visited every 24 hours by mental health services while on contraband watch. Defendants' Statement of Undisputed Facts [56-1], ¶16. He was also evaluated on September 30, 2009, shortly before his release from contraband watch confinement, to "determin[e] if he require[d] a 1:1 suicide watch", but at that time plaintiff "denie[d] any current thoughts of self-harm". Amended Complaint [67-10], p. 2 of 2.

Therefore, I conclude that plaintiff has failed to establish an Eighth Amendment violation, and recommend that defendants' motion be granted.[7]

## CONCLUSION

For these reasons I recommend the defendants' motion for summary judgment [56] is granted. Unless otherwise ordered by Judge Vilardo, any objections to this Report and Recommendation must be filed with the clerk of this court by August 22, 2016 (applying the time frames set forth in Rules 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Vilardo. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". <u>Wesolek v. Canadair Ltd.</u>, 838 F. 2d 55, 58 (2d Cir. 1988); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the

---

[7]    Based on this conclusion, it is unnecessary for me to address defendants' remaining arguments.

magistrate judge in the first instance.  Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated:   August 4, 2016

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge
